STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-99-064

PAF-YOR-2/1/2000

ANDREW MORROW,

Plaintiff

v.

RONALD BOUTET,
MARY BOUTET and
OCEANSIDE LOUNGE
CORPORATION,

Defendants

ORDER
AND
DECISION

DONALD L. GARBRECHT
LAW LIBR.

FEB 25 2000

The plaintiff was injured by an unidentified drunken patron of the Oceanside Lounge in Old Orchard Beach. He then brought suit against the lounge's owner Marboot, Inc. under the liquor liability law and obtained a jury verdict for $120,000 against Marboot on August 19, 1997. With interest and costs this amount grew to over $136,000. Defendant Ronald Boutet was the sole shareholder and officer and was a director of Marboot from 1988 to 1996. In 1997 his daughter-in-law Mary Boutet became a director. His son Steven managed the lounge.

The lounge occupies space that was rented from the Oceanside Trust, also called the Ocean Side Lounge Trust, whose trustee is Ronald Boutet. The trust executed a lease with Marboot in 1993 which ran through 1995 with a option to renew until 2000, which was exercised in 1995. It owned the fixtures and equipment used by the lounge.

Shortly after the verdict Ronald Boutet on August 27, 1997 created a new corporation, the Oceanside Lounge Corporation, with Mary Boutet as the sole

director, officer and shareholder. The lounge has continued in business to this day under the name of "Oceanside Lounge" and under the direction of the Oceanside Lounge Corporation (OLC). Also on August 27, 1997 Ronald Boutet applied for a liquor license for OLC. Until its own license came on December 4, 1997 OLC operated the lounge under the Marboot liquor license. On September 1 OLC and the trust signed a lease for the lounge premises.

On September 3, 1997 Marboot filed a voluntary Chapter 11 bankruptcy proceeding which was converted to a liquidation case. The plaintiff's claims in this case were abandoned by the bankruptcy trustee allowing this case to go forward.

The plaintiff has brought two claims. The first is a claim directed at Ronald Boutet, as a director of Marboot, pursuant to 13-A M.R.S.A. §720(2)(C) claiming that Ronald Boutet improperly distributed assets of Marboot to its shareholders without ". . . the payment and discharge of, or without adequate provisions for, all known or reasonably ascertainable debts, obligations and liabilities of the corporation . . . ." Such a claim may be enforced by a creditor. See 13-A M.R.S.A.§720)(3)(C) and *Zimpritch, Maine Corporation Law & Practice* §7.11 (a). The second claim is against Ronald Boutet, Mary Boutet and OLC under the Uniform Fraudulent Transfer Act, see 14 M.R.S.A. §§3571- et seq. The two claims can be considered together as they have several issues in common.

The first issue is whether the transfer of any assets of Marboot was made by someone who would be liable or to someone who would be liable under either the Title 13A or Title 14 provisions. Under 13-A M.R.S.A. §720 potential liability exists

against only Ronald Boutet because of his capacity as a director of Marboot. Under 14 M.R.S.A. §3579 (2) judgment may be entered against the first transferee, OLC, or the person for whose benefit the transfer was made, in this case Ronald Boutet and Mary Boutet given the true nature of OLC and the relationship of the parties.

It is beyond any doubt that if something of value was transferred, an improper distribution of assets and a fraudulent transfer took place. All of the requirements are met. All of the relevant definitions in 14 M.R.S.A. § 3572 including those of "asset", "claim", "creditor", "debtor", "insider", "property" and "transfer" apply. Marboot was insolvent. Any transfer was absolutely fraudulent. The transfer was made to a corporation controlled by Ronald Boutet which retained possession and control of the lounge which was managed by his son. Mary Boutet was in charge of OLC in name only. The transfer of all the assets was shortly after a substantial debt was incurred and Marboot became insolvent. In short, liability potentially exists under both counts against each and every defendant as named in each count. As the creation of OLC and the taking over of the lounge by OLC were an attempt to defraud the plaintiff liability would also be imposed on Ronald Boutet and on Mary Boutet once the fiction of OLC was disregarded.

The next issue concerns what was transferred. Once corporate veils are pierced, veneers removed and facades ignored the true purpose of all the machinations is shown. Every skillfully done fraudulent transfer can be defended. That is why surface appearances must be ignored and the definition of transfer at 14 M.R.S.A.§3572(12) carefully considered. "Transfer" includes every mode, direct and

3

indirect of parting with an asset. A profitable business existed. A large uninsured judgment was a problem. If all went well, bankruptcy would wipe out the debt, a new corporation could be formed, a new lease signed and the business would be preserved for the benefit of the Boutet family without the inconvenience of paying Mr. Morrow. The business was transferred. It consisted of a lease, some inventory and the right to operate a money making, well known bar.

The final issue is what is the value of the assets that were transferred in violation of Title 13-A and Title 14. The two sides each presented an expert witness. I found the plaintiff's expert Mark Filler more persuasive on this issue. The bar had been making money including some that appears not to be reported to the Internal Revenue Service or the State of Maine. Sales tax revenues were not fully reported either. Bands which played at the Lounge were paid under the table. Steven Boutet got a good paying job from the Lounge which may have included both reported and not reported income. The substantial efforts that Ronald Boutet undertook to avoid a debt, preserve the lounge and transfer its assets are further evidence of its value. I accept the lower end of Mr. Filler's range of values of $100,000 and find his owner's discretionary cash value methodology to be particularly persuasive.

The efforts of the defendants in this case are a shameless blatant attempt to avoid paying an obligation and are consistent with similar possible efforts to defraud the federal and state governments.

Therefore the entry is:

> Judgment for the plaintiff against Ronald Boutet on Count I of the complaint in the amount of $100,000, interest and costs.

4

Judgment for the plaintiff against Ronald Boutet, Mary Boutet and Oceanside Lounge Corporation on Count II of the complaint in the amount of $200,000, interest and costs.


Dated:       February 1, 2000


Paul A. Fritzsche
Justice, Superior Court


PLAINTIFF:   Ronald Coles, Esq.
             COLES & THOMPSON
             PO Box 1028
             Kennebunk Me 04043-1028


DEFENDANT:   Richard Olson, Esq.
             PERKINS OLSON & PRATT
             PO Box 449
             Portland Me 04112-0449